# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| VENMILL INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | NO. 14-40064-TSH |
| ELM, INC., ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (Docket No. 20) AND PLAINTIFF'S MOTIONS FOR DIRECTED SERVICE OF PROCESS (Docket No. 23) AND JURISDICTIONAL DISCOVERY (Docket No. 27)

April 22, 2015

HILLMAN, D.J.

This is a declaratory judgment action in which Plaintiff Venmill Industries, Inc. seeks a declaration that it does not infringe on any valid claim of U.S. Patent No. 8,342,905. Defendant ELM, Inc., the owner of the patent, has moved to dismiss the First Amended Complaint for lack of personal jurisdiction and insufficient service of process. (Docket No. 20). Plaintiff has filed cross-motions for an order directing service of process by alternative means, (Docket No. 23), and for jurisdictional discovery. (Docket No. 27). For the reasons set forth below, Defendant's motion to dismiss is **_granted_**. Plaintiff's motions for directed service of process and jurisdictional discovery are **_denied_**.

**Background**

Plaintiff Venmill Industries, Inc. ("Plaintiff" or "Venmill") is a Massachusetts corporation with a principal place of business at 670 Douglas Street in Uxbridge, Massachusetts. The company develops and manufactures disk repair and maintenance products, including a disk-cleaning product called the "VMI Hybrid." Defendant ELM, Inc. ("Defendant" or "ELM") is also engaged in the business of manufacturing disk restoration products. ELM is a privately held company incorporated under the laws of Japan, with a principal place of business in Japan.

ELM is the owner of U.S. Patent No. 8,342,905 ("the '905 Patent"). The '905 Patent, entitled "Optical Disk Restoration Method and Apparatus," purports to cover a process by which optical disks, such as DVDs, can be restored. On April 17, 2014, counsel for ELM sent a cease-and-desist letter to Venmill, asserting that Venmill's VMI Hybrid product infringes one or more claims of the '905 Patent. The letter demanded that Venmill immediately stop making, selling, and/or offering for sale the product within the United States. Venmill asserts that the VMI Hybrid product does not infringe on any valid and enforceable claim of the '905 Patent. Venmill filed this declaratory judgment action on May 14, 2014, seeking a declaration of non-infringement.

**Discussion**

Federal Circuit law governs the jurisdictional issues in this case, because "personal jurisdiction in a declaratory action for non-infringement is 'intimately related to patent law[.]'" *Breckenridge Pharm., Inc. v. Metabolite Labs, Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003)). Venmill need only make a *prima facie* showing that ELM is subject to personal jurisdiction, because the parties have not yet conducted discovery. *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552

F.3d 1324, 1328-29 (Fed. Cir. 2008). The pleadings and affidavits are to be construed in the light most favorable to Venmill; the Court "must accept the *uncontroverted* allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (emphasis in original). However, a plaintiff is only entitled to those inferences that can be reasonably drawn from the allegations. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1018 (Fed. Cir. 2009).

*Jurisdictional Facts*

Venmill asserts that this Court may exercise jurisdiction over ELM because ELM has purposefully directed certain activities in the United States. The First Amended Complaint contends that ELM has subjected itself to the jurisdiction of this Court under Fed. R. Civ. P. 4(k)(2) by obtaining a United States patent and enforcing its patent rights in the United States. As grounds therefore, Paragraphs 16(a) through (g) allege the following jurisdictional facts:

(a) ELM had granted a license and/or exclusive license to an entity formed under U.S. law and known as "Elm USA, Inc." to distribute, in and throughout the United States, product ostensibly incorporating ELM's patented technology under the '905 Patent, pursuant to which license agreement ELM conferred upon Elm USA, Inc. the right and/or duty to enforce, or to assist ELM in enforcing, the '905 Patent in and throughout the United States, including in this judicial district;

(b) Elm USA, Inc. was, as of the date of commencement of this action, the sole and/or exclusive licensee of ELM in the United States, with the right and/or duty to enforce ELM's '905 Patent in and throughout the United States, including in this judicial district;

(c) ELM had, as of the date of commencement of this action, contracted for services to be performed in the United States relating to or in connection with ELM's enforcement of the '905 Patent in the United States;

(d) ELM had, as of the date of commencement of this action, initiated international and/or interstate communications with persons in the United States, and/or had sent ELM employees from Japan to the United States, in connection with or relating to ELM's enforcement of the '905 Patent in the United States;

3

(e) ELM had, as of the date of commencement of this action, wire transferred and/or directed through the U.S. mails money (or other things of value) into the United States in connection with or related to ELM's enforcement of the '905 Patent in the United States;

(f) ELM had, as of the date of commencement of this action, purchased goods or services in the United States in furtherance of ELM's enforcement of its '905 Patent in the United States; and

(g) ELM had, as of the date of commencement of this action, caused one or more cease-and-desist communications to be directed to one or more persons in, or operating in, the United States, in furtherance of ELM's enforcement of the '905 Patent in the United States.

Pl.'s First Am. Compl. ¶ 16(a)-(g). Filed with the First Amended Complaint are the '905 Patent (Docket No. 15, Ex. A), the patent assignment establishing ownership of the '905 Patent by ELM (Docket No. 15, Ex. B), and the cease-and-desist letter sent to Venmill by ELM's U.S. counsel (Docket No. 15, Ex. C).

In moving to dismiss for lack of personal jurisdiction, ELM has filed the declaration of Takakazu Miyahara, the company's President and CEO. *See* Miyahara Dec., Docket No. 21-1. The declaration concedes that ELM owns the '905 Patent, and that ELM's U.S. counsel sent a cease-and-desist letter to Venmill. *See* Miyahara Dec. ¶ 7, 10(g), 11. However, it disputes all other jurisdictional facts that Venmill has alleged. The declaration states that ELM has no branch, bank accounts, tax filing obligations, employees, manufacturing or development operations, or exclusive distributor in the United States. Miyahara Dec. ¶ 2-3, 5, 7. The declaration further asserts that ELM does not market or sell products, have a registered agent for service of process, or own real estate in Massachusetts *Id.* at ¶ 3, 4, 7. The declaration specifically refutes the allegations that, at the time this action was filed, ELM had granted an exclusive distribution or enforcement license in the United States related to the '905 Patent, purchased or contracted for services in the United States in connection with its '905 Patent

4

enforcement activity, communicated with persons in the United States in connection with enforcement activity, and wire transferred or directed money into the United States related to enforcement activity.[1] *Id.* at ¶ 10(a)-(f).

In response to the Miyahara Declaration, Venmill offers no support for its assertion of ELM's connections to Massachusetts and the United States in paragraphs 16(a) through (f) of the First Amended Complaint. The Court will not credit such allegations in the face of the specific denials in ELM's sworn declaration. *See Autogenomics*, 566 F.3d at 1014-16 (making findings of jurisdictional fact based on Defendant's uncontested declaration that it lacked contacts in California). The only evidence offered by Venmill in support of jurisdiction establishes facts that ELM does not contest: ELM owns the '905 Patent and has sent a cease-and-desist letter.

*Personal Jurisdiction*

The Court begins with Rule 4 of the Federal Rules of Civil Procedure.[2] *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009) ("Rule 4 is the starting point for any personal jurisdictional analysis in federal court."). At issue is whether jurisdiction over ELM may be exercised under Rule 4(k)(1)(A) or Rule 4(k)(2).[3]

*Jurisdiction under Rule 4(k)(1)(A)*

Rule 4(k)(1)(A) provides that service of process establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where

---

[1] The declaration admits these allegations only to the extent that ELM retained U.S. counsel to investigate the VMI Hybrid product and send a cease-and-desist letter. *See id.*

[2] In addition to the personal jurisdiction questions discussed below, the parties dispute whether service of process has properly been achieved. Venmill has moved for an order directing service of process on ELM by alternative means under Fed. R. Civ. P. 4(f)(3). The Court does reach the service issue because, as explained in this Order, due process prohibits the exercise of jurisdiction in this case.

[3] The First Amended Complaint only alleges jurisdiction under Rule 4(k)(2) on a theory of specific jurisdiction. In subsequent briefing Venmill suggests that ELM may be subject to either general or specific jurisdiction under either 4(k)(1)(A) or 4(k)(2). Therefore, the Court will analyze jurisdiction under both rules.

5

the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Analysis of personal jurisdiction under this rule involves a familiar two step inquiry. First, the Court must "decide whether the forum state's long-arm statute permits service of process" on the defendant. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1411 (Fed. Cir. 2009). Second, the Court must "determine whether the assertion of personal jurisdiction with that long-arm statute would violate the U.S. Constitution's guarantee of due process." *Id.* In this case, the Court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis, however, because the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002) (quoting *"Automatic" Sprinkler Corp. v. Seneca Foods Corp.*, 361 Mass. 441, 443, 280 N.E.2d 423 (1972)). Thus, the question becomes whether exercising jurisdiction over ELM in the District of Massachusetts "comports with due process." *Avocent*, 552 F.3d at 1329.

Principles of due process require that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154 (1945) (internal quotations omitted). "In short, the Due Process Clause requires a court to determine whether a defendant 'should reasonably anticipate being haled into court there.'" *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559 (1980)). A defendant's contacts with the forum state may give rise to either general jurisdiction or specific jurisdiction. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their

6

affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, --- U.S. ---, ---, 131 S.Ct. 2846, 2851 (2011) (internal quotations omitted). Conversely, specific jurisdiction arises from "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (internal quotations omitted). Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotations omitted).

### General Jurisdiction Analysis

There is no dispute that ELM does not have a principal place of business in Massachusetts, nor is incorporated under the laws of Massachusetts.[4] Nor does the First Amended Complaint include any allegations tying ELM to Massachusetts beyond the fact that ELM's counsel sent a cease-and-desist letter to Venmill's headquarters in Uxbridge. Such a record plainly does not support the conclusion that ELM has "affiliations so continuous and systematic as to render them essentially at home" in Massachusetts. *Goodyear*, 131 S.Ct. at 2851; *see also Daimler AG v. Bauman*, --- U.S. ---, ---, 134 S.Ct. 746, 758 n.11 (2014) (observing that general jurisdiction requires contacts so strong that the foreign corporation should be "comparable to a domestic enterprise in that state"); *Autogenomics*, 566 F.3d at 1014–18 (Fed. Cir. 2009) (holding that California court lacked general jurisdiction over defendant where defendant had numerous licenses or other agreements with California companies, attended three conferences in the state, and sold $7,600 worth products to a California company amounting to 1% of its annual revenue).

---

[4] "[T]he place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, --- U.S. ---, ---, 134 S.Ct. 746, 760 (2014) (internal alterations and quotations omitted).

7

## Specific Jurisdiction Analysis

Where the defendant is not subject to general jurisdiction, due process may still permit a district court to exercise specific jurisdiction. The Federal Circuit employs a three-part test for specific jurisdiction, asking whether:

> (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair.

*Breckenridge Pharm.*, 444 F.3d at 1363. "The first two factors correspond with the 'minimum contacts prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed Cir. 2001). The plaintiff has the burden of establishing minimum contacts. *See Elecs. for Imaging, Inc.*, 340 F.3d at 1350. Upon this showing, it is the defendant's burden to show that the exercise of jurisdiction in unreasonable. *Id.*

The only activity ELM directed at Massachusetts was the cease-and-desist letter sent by ELM's counsel to Venmill's headquarters at 670 Douglas Street in Uxbridge. Such a letter fulfills the minimum-contacts factors of the specific jurisdiction test, because the communication was "purposefully directed" at Massachusetts and gave rise to this declaratory judgment action. *See Silent Drive*, 326 F.3d at 1202. However, the Federal Circuit has repeatedly made clear that the assertion of jurisdiction based solely on cease-and-desist letters would not be reasonable and fair. *See, e.g.*, *Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011).

The rationale, first set forth in *Red Wing Shoe, Inc. v. Hockerson-Halberstadt, Inc.*, is that "principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." 148 F.3d 1355, 1360-61 (Fed. Cir. 1998). Thus, to ground personal jurisdiction "on [cease-and-desist

letters] alone would not comport with principles of fairness." *Id.* at 1361. Instead, fair play and substantial justice require the foreign defendant to engage in "'other activities' that relate to the *enforcement* or the *defense of the validity* of the relevant patents." *Avocent*, 552 F.3d at 1334 (emphasis in original). Such activities "include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id.* The Federal Circuit has observed that this doctrine is rooted in policy considerations unique to the national patent system. *See Silent Drive*, 326 F.3d at 1206.

Venmill makes no allegation, nor offers any evidence, of other enforcement activities by ELM in Massachusetts. Because jurisdiction grounded solely in a cease-and-desist letter offends traditional notions of fair play and substantial justice, exercising specific jurisdiction under Rule 4(k)(1)(A) would violate the U.S. Constitution's guarantee of due process.

*Jurisdiction under Rule 4(k)(2)*

The primary basis asserted by Venmill for this Court's jurisdiction over ELM is Rule 4(k)(2). Known as the federal long-arm statute, Rule 4(k)(2) "was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist," even if there are insufficient contacts with any one forum state. *Synthes*, 563 F.3d at 1295-96. The rule provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). The Federal Circuit has interpreted the rule "to allow a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Synthes*, 563 F.3d at 1293.

### (1) Whether the claim arises under federal law

There is no doubt that where, as here, "federal patent law creates the cause of action or . . . the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law," the claim "arise[s] under federal law for purposes of Rule 4(k)(2)." *Touchcom*, 574 F.3d at 1411 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809, 108 S.Ct. 2166 (1988)).

### (2) Whether ELM is subject to jurisdiction in any state's courts of general jurisdiction

The second requirement for exercising jurisdiction under 4(k)(2) has been met. In *Touchcom, Inc. v. Bereskin & Parr*, the Federal Circuit held that 4(k)(2)(A) allows a foreign defendant to "avoid the application of 4(k)(2) when it designates a suitable forum in which the plaintiff could have brought suit." *Touchcom*, 574 F.3d at 1411. Attempting to invoke this escape hatch, ELM argues that it has designated both New Jersey and the U.S. District Court for the Eastern District of Virginia as forums in which Venmill could have filed this action. Neither forum, however, is suitable under 4(k)(2).

ELM first argues that it has consented to suit in New Jersey's courts of general jurisdiction by filing an infringement lawsuit against Venmill in U.S. District Court for the District of New Jersey. However, that lawsuit was filed on July 21, 2014, over two months after this action commenced. *See* Docket No. 41, Ex. A. The opinion in *Touchcom* announced that a defendant may avoid 4(k)(2) by designating a suitable forum where the plaintiff "*could have* brought suit." *Touchcom*, 574 F.3d at 1411 (emphasis added). This language has led to the Federal Circuit's subsequent observation that "a defendant cannot defeat Rule 4(k)(2) by simply naming another state," and instead must identify "a forum where jurisdiction would have been proper at the time of filing." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294 (Fed. Cir. 2012).

Consequently, ELM cannot avoid 4(k)(2) by designating New Jersey, because it had not subjected itself to the general jurisdiction of New Jersey courts at the time this action was filed.

ELM's argument with respect to the Eastern District of Virginia is also unavailing. ELM suggests that under 35 U.S.C. § 293, it has designated the U.S. District Court for the Eastern District of Virginia as a suitable forum under 4(k)(2).[5] However, federal courts are of limited, not general jurisdiction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). As Judge Gorton has observed, this Court is "not free to disregard the plain language of [Rule 4(k)(2)], which applies, by its terms, in a federal question case to a foreign defendant not subject to the jurisdiction of the courts of *general jurisdiction* of any state." *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F. Supp. 484, 488 (D. Mass. 1996) (emphasis in original) (internal quotations omitted). Thus, a defendant cannot avoid application of the rule by pointing to the federal forum designated by 35 U.S.C. § 293. *See id.*

(3) Whether exercising jurisdiction is consistent with the U.S. Constitution and laws

The first two prerequisites for jurisdiction under 4(k)(2) having been satisfied, the Court turns to the third and final requirement: whether exercising jurisdiction is consistent with the U.S. Constitution and laws. The Federal Circuit has interpreted this prong to mean that "the exercise of jurisdiction [must] comport[] with due process." *Synthes*, 563 F.3d at 1293. For the due process inquiry under 4(k)(2), courts employ the same three-part test as is used for specific jurisdiction under 4(k)(1)(A).[6] *Touchcom*, 574 F.3d at 1416 (citing *Synthes*, 563 F.3d at 1297).

---

[5] Section 293, the patent long-arm statute, creates jurisdiction over a foreign patentee for claims affecting the patent in U.S. District Court for the Eastern District of Virginia, unless the foreign patentee designates an alternative agent for service of process. *See* 35 U.S.C. § 293.

[6] Venmill suggests that ELM may be subject to both specific and general jurisdiction under 4(k)(2). For the same reasons that general jurisdiction is not available under 4(k)(1)(A), it is not available under 4(k)(2). There are no allegations or evidence from which the inference could reasonably be drawn that ELM has "affiliations so continuous and systematic as to render them essentially at home" in the United States. *Goodyear*, 131 S.Ct. at 2851. Furthermore, after the Supreme Court's decision in *Daimler AG v. Bauman*, it is unlikely that general jurisdiction

11

The due process analysis under 4(k)(2) differs from 4(k)(1)(A), however, because it "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Synthes*, 563 F.3d at 1295-96 (citing Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment). *See also Touchcom*, 574 F.3d at 1416 (noting that under 4(k)(2), courts must consider a defendant's "contacts with the nation as a whole") (internal quotations omitted).

In this case, the only fact that the broadened lens of 4(k)(2) adds to the equation is that ELM has acquired a U.S. Patent. Under Federal Circuit law, this does not affect the Court's inquiry into the reasonableness of exercising jurisdiction. As described above, where a plaintiff seeks a declaration of non-infringement against a patentee, principles of fair play and substantial justice require enforcement activities "in addition to cease-and-desist letters" to make the exercise of jurisdiction reasonable. *See Avocent*, 552 F.3d at 1334-35. Acquisition of a patent is a prerequisite to *any* attempt at patent enforcement, including a cease-and-desist letter. This added connection to the national forum cannot constitute the type of "other" enforcement activity that would make the exercise of jurisdiction reasonable and fair.

Venmill offers no other evidence or substantiated allegations that ELM engaged in other enforcement activity. To the extent that Venmill points to ELM's infringement suit in U.S. District Court for the District of New Jersey, it is not relevant because that suit was filed over two months after this action commenced. The Federal Circuit has not articulated what time frame courts should consider when examining a foreign patentee's enforcement activities. However, when it comes to specific jurisdiction, courts generally consider only those contacts before and

---

over a foreign defendant could ever be available under 4(k)(2). --- U.S. ---, 134 S.Ct. 746 (2014). In *Daimler*, the Supreme Court rejected as "unacceptably grasping" the notion that foreign corporations are subject to general jurisdiction even if they engage in a "substantial, continuous, and systematic course of business" in a given forum. *Id.* at 761-63.

surrounding the accrual of the cause of action. *See* 16 James William Moore, Moore's Federal Practice § 108.42[2][a] ("The proper focus in the specific jurisdiction analysis is on those contacts leading up to and surrounding the accrual of the cause of action. Later events are not considered."). The First Circuit has stated that "in most cases, contacts coming into existence after the cause of action arose will not be relevant." *Harlow v. Children's Hosp.*, 432 F.3d 50, 61-62 (1st Cir. 2005). Applying this rule, the Court finds ELM's infringement suit in New Jersey irrelevant to the personal jurisdiction analysis under 4(k)(2).[7]

Consequently, even considering ELM's contacts with the nation as a whole, Venmill has not made a *prima facie* showing that ELM is subject to personal jurisdiction in this Court. This result is consistent with Federal Circuit precedents that have considered the application of Rule 4(k)(2) in the patent context. To be sure, 4(k)(2) has successfully been invoked in patent cases before. *See Synthes*, 563 F.3d 1297-1300 (finding that exercising jurisdiction under 4(k)(2) over alleged patent-infringer comported with due process); *Merial Ltd.*, 681 F.3d at 1292-98 (same); *Touchcom*, 574 F.3d at 1416-18 (finding that exercising jurisdiction under 4(k)(2) in legal malpractice claim against foreign attorney hired to prosecute plaintiff's U.S. patent comported with due process); *cf. Bradford Co. v. Conteyor North America, Inc.*, 603 F.3d 1262, 1271-73 (remanding where district court improperly failed to consider an alleged patent-infringer's contacts with the entire nation under 4(k)(2)). However, the Federal Circuit has never approved the exercise of jurisdiction under 4(k)(2) where, as here, the plaintiff seeks a declaration of non-

---

[7] To conclude otherwise would create the nonsensical outcome that jurisdiction in Massachusetts became reasonable two months after the case began, only because ELM filed an infringement suit in New Jersey. This result would effectively allow declaratory judgment plaintiffs to circumvent the *Red Wing Shoe* guarantee and force patentees into unwanted forums if they later choose to litigate their patent rights. Excluding the New Jersey infringement suit from the analysis also comports with the Federal Circuit's related observation in *Merial*, that to defeat jurisdiction under 4(k)(2)(A) a defendant must identify a forum where the plaintiff could have brought suit *at the time of filing*. 681 F.3d 1283, 1294 (emphasis added). It would not be fair and reasonable to exercise jurisdiction by finding the New Jersey infringement suit irrelevant under 4(k)(2)(A), but relevant to the due process analysis.

infringement against a foreign patentee who has merely sent cease-and-desist communications into the country.[8]

In fact, in its most recent case regarding the exercise of jurisdiction over a foreign patentee in a declaratory judgment action, the Federal Circuit specifically declined to invoke 4(k)(2). In *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, a California biotechnology company sued a British corporation, seeking a declaration of non-infringement and invalidity of the defendant's patent in U.S. District Court for the Central District of California. 566 F.3d 1012 (Fed. Cir. 2009). Despite the defendant's "significant commercialization and licensing efforts" in California, the court found that fair play and substantial justice shielded it from the exercise of jurisdiction. *Id.* at 1018-21. Citing *Red Wing Shoe* and its progeny, the court found that the plaintiff had "failed to allege sufficient activities 'relat[ing] to the validity and the enforceability of the patent' in addition to the cease-and-desist communications." *Id.* at 1021 (quoting *Avocent*, 552 F.3d at 1336). As a result, the Federal Circuit panel affirmed the district court's ruling that it lacked personal jurisdiction over the defendant. *Id.*

In reaching this conclusion the panel majority chose not to apply Rule 4(k)(2)—despite the dissenting opinion's assertion that, pursuant to the Federal Circuit's decision in *Synthes*, the rule provided an avenue for jurisdiction. *See id.* at 1026-27 (Newman, Circuit J., dissenting). The majority distinguished *Synthes* because that case was "an infringement suit brought by the patentee against an accused infringer." *Id.* at 1020 n.1. In such an action, all of an accused infringer's commercial contacts with a forum are "highly relevant to personal jurisdiction." *Id.*

---

[8] Venmill correctly points out that in *Pharmachemie*, Judge Gorton approved the exercise of jurisdiction under 4(k)(2) in a declaratory judgment action involving patent rights. 934 F. Supp. at 485-88. However, in that case the defendant conceded that its contacts with the United States were sufficient to satisfy due process, so Judge Gorton did not address the question. Further, that case was decided just four weeks after *Red Wing Shoe*. As described in detail above, subsequent cases have solidified the Federal Circuit's mandate that due process requires enforcement activities in the forum, beyond the sending of cease-and-desist letters, before a court may exercise jurisdiction over a foreign patentee. *See, e.g.*, *Autogenomics*, 566 F.3d at 1019-20.

Not so in cases where a declaratory judgment action is based on the defendant's efforts to enforce its patent rights. *Id.* As the Federal Circuit explained in *Avocent*, "[w]hat the patentee makes, uses, offers to sell, sells, or imports is of no real relevance to the enforcement or defense of a patent, because 'the federal patent laws do not create any affirmative right to make, use, or sell anything.'" *Avocent*, 552 F.3d at 1336. Because *Autogenomics* was a declaratory judgment action against a foreign patentee, the majority chose instead to rely on the principle of *Red Wing Shoe*: fair play and substantial justice permit a patentee to notify others of its patent rights without subjecting itself to jurisdiction, unless the patentee engages in additional enforcement activities in the forum. *See Autogenomics*, 566 F.3d. at 1019-21, n.1.

Although the *Autogenomics* majority did not discuss the applicability of 4(k)(2) in detail, the result plainly suggests that a patentee's constitutionally protected "latitude to inform others of its patent rights" is guaranteed not only under 4(k)(1), but also 4(k)(2). *Silent Drive*, 326 F.3d at 1206. Indeed, this Court is aware of no reason to conclude otherwise. The exercise of jurisdiction under 4(k)(2) in cases like this would allow declaratory judgment plaintiffs to hale a foreign patentee into *any* federal district court in the country, solely on the basis that the patentee sent communications into the United States to make known their patent rights. This is precisely the type of scenario that the Federal Circuit has observed to be unreasonable and unfair, due to policy considerations unique to the national patent system. *See Silent Drive*, 326 F.3d at 1206 (describing the justification for the *Red Wing Shoe* doctrine by noting that "[i]f infringement letters created jurisdiction, the patentee could be haled into court anywhere the letters were sent"). Therefore, the Court finds that exercising jurisdiction over ELM in this declaratory judgment action would offend traditional notions of fair play and substantial justice.

This reading of 4(k)(2) does not allow foreign patentees to escape the reach of the federal courts completely. Pursuant to 35 U.S.C. § 293, a foreign patentee is subject to jurisdiction in actions affecting its patent in U.S. District Court for the Eastern District of Virginia, unless it designates an alternative agent for service of process.[9] *See* 35 U.S.C. § 293. Had Venmill sued ELM in the Eastern District of Virginia, the exercise of jurisdiction over ELM would *not* have offended traditional notions of fair play and substantial justice. While the instant declaratory judgment action is based on ELM's enforcement attempts in Massachusetts (thereby implicating *Red Wing Shoe* and its progeny), a patent suit filed in the Eastern District of Virginia arises out of the initial registration of the patent. *See Nat. Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1009-10 (D.C. Cir. 1989). This presents an alternative basis for exercising jurisdiction. By registering a patent with the United States Patent and Trademark Office—located in the Eastern District of Virginia—a foreign patentee "purposefully avails itself of the benefits and protections patent registration in this country affords." *Id.* at 1009. It is therefore fair and reasonable, in actions concerning the patent, to subject the party to the jurisdiction of the federal court where the U.S. Patent and Trademark Office is located.[10] *See id.*

---

[9] The Court notes that 35 U.S.C. § 293 may itself make the exercise of jurisdiction in this case inconsistent "with the United States . . . *laws*," thereby providing an independent basis for precluding the application of 4(k)(2). Rule 4(k)(2) was enacted in 1993 to ensure that non-resident defendants with significant ties to the United States, but insufficient contacts to support jurisdiction under any state long-arm statute, could not escape the enforcement of federal law. *See Synthes*, 563 F.3d at 1295-96. However, Rule 4 also recognizes that Congress may authorize jurisdiction in the federal courts by statute. *See* Fed. R. Civ. P. 4(k)(1)(C). One such statute is 35 U.S.C. § 293, which was enacted in 1952 to "assure[] a forum for suit in the United States in [patent] cases that might not be accommodated by either state or federal courts." *TomTom, Inc. v. AOT Systems GmbH*, 893 F. Supp. 2d 785, 788 (E.D.Va. 2012) (internal quotation omitted). By creating jurisdiction in a federal forum, section 293 already remedied—with respect to foreign patentees—the precise problem that 4(k)(2) was enacted to fix. Therefore, exercising jurisdiction over ELM in the District of Massachusetts could be understood as inconsistent with the patent long-arm statute. This conclusion might preclude application of 4(k)(2), even if exercising jurisdiction was otherwise consistent with due process. *See Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (finding that the phrase "Constitution and laws" as used in 42 U.S.C. § 1983 created a cause of action for "violations of federal statutory as well as constitutional law").

[10] In 2011, Congress amended 35 U.S.C. § 293, designating the U.S. District Court for the Eastern District of Virginia as the fallback forum for jurisdiction in patent proceedings, instead of the U.S. District Court for the District of Columbia. *TomTom, Inc. v. AOT Systems GmbH*, 893 F. Supp. 2d 785, 788 n.4 (E.D.Va. 2012). The

For the foregoing reasons, the Court finds that asserting personal jurisdiction over ELM would violate the U.S. Constitution's guarantee of due process. Because Venmill has failed to make a *prima facie* showing that ELM is subject to personal jurisdiction in this Court, ELM's motion to dismiss will be granted. Further, because this Court would lack personal jurisdiction over ELM even if proper service of process were achieved, the Court will deny as moot Venmill's motion for directed service.

*Jurisdictional Discovery*

In an attempt to keep this patent dispute in the District of Massachusetts, Venmill moves for leave to take jurisdictional discovery. The Federal Circuit reviews district court decisions regarding jurisdictional discovery for abuse of discretion, applying the law of the regional circuit. *See Autogenomics*, 566 F.3d at 1021; *see also TomTom, Inc. v. Norman IP Holdings, LLC*, 890 F. Supp. 2d 160, 172-73 & n.6 (D. Mass. 2012) (applying First Circuit law in a patent case to question of whether jurisdictional discovery is appropriate in the first instance). In the First Circuit, "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625 (1st Cir. 2001) (emphasis in original) (internal quotations omitted). But even where a plaintiff makes a colorable case for personal jurisdiction, "the district court still has 'broad discretion to decide whether discovery is required.'" *Id.* at 625-26 (quoting *Crocker v. Hilton Int'l Barb., Ltd.*, 976 F.2d 797, 801 (1st Cir. 1992)).

Whether Venmill's discovery requests make out a "colorable case" of personal jurisdiction in turn must be determined against the backdrop of Federal Circuit law governing

---

change was presumably made because the United States Patent and Trademark Office is located in the Eastern District of Virginia. *Id.*

17

personal jurisdiction over a patentee in a declaratory judgment action. *See Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1323 (Fed. Cir. 2005) (noting that "in determining the *relevance* of a request for jurisdictional discovery, we apply Federal Circuit law") (emphasis added); *see also Breckenridge Pharm.*, 444 F.3d at 1361 ("The issue of personal jurisdiction in a declaratory action for non-infringement is intimately related to patent law and thus governed by Federal Circuit law regarding due process.") (internal quotations omitted). The relevant inquiry, then, is whether Venmill has made out a colorable case that ELM has engaged in patent enforcement or defense activities sufficient to support personal jurisdiction. *See Avocent*, 552 F.3d at 1334-35.

Venmill fails to make such a case. In support of its motion, Venmill presents a laundry list of discovery items related to ELM's potential connections to both Massachusetts and the United States. Much of the requested material—such as sales of ELM products or services in relation to the '905 patent—is irrelevant to the personal jurisdiction inquiry in the context of a declaratory judgment action against a foreign patentee. *See Avocent*, 552 F.3d at 1336 (remarking that "a defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement").

To the extent that Venmill seeks relevant information, the motion blanketly asserts that "ELM obviously and directly targeted the United States for patent enforcement efforts" based only on the fact that ELM owns the '905 patent, and requests license to inquire into any and all of ELM's patent enforcement activities in the United States. *See* Pl.'s Mem., Docket No. 28 at 8. However, other than ELM's patent ownership, Venmill fails to allege or proffer evidence of any

specific contacts relevant to the jurisdictional inquiry. *See Swiss Am. Bank, Ltd.*, 274 F.3d at 626-27 (observing that failure to allege specific and relevant contacts "can be fatal to [a jurisdictional discovery] request"). Furthermore, the request to take discovery of ELM's patent enforcement activities in the United States flies in the face of ELM's sworn declaration, which unequivocally denies engaging in such activities. *See* Miyahara Dec. at ¶ 10(a)-(f). Consequently, the Court finds that the requested discovery would amount to no more than a fishing expedition. *See Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) ("[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery . . . ."). Venmill's motion for jurisdictional discovery will be denied.

## Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss the First Amended Complaint (Docket No. 20) is ***granted***. Plaintiff's Motion for Jurisdictional Discovery (Docket No. 27) is ***denied***. Plaintiff's Motion for Directed Service of Process (Docket No. 23) is ***denied*** as moot. The case is dismissed.

**SO ORDERED.**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**